**UNITED STATES OF AMERICA**
ex rel. **TODD HEATH**,
        **Plaintiff/Relator,**

v.                                              Case No. 08-cv-0724

**WISCONSIN BELL, INC.,**
        **Defendant.**
_____

## DECISION AND ORDER

Relator Todd Heath brings this *qui tam* action against defendant Wisconsin Bell alleging that defendant violated the False Claims Act ("FCA") by fraudulently obtaining subsidies by falsely certifying that it was providing telecommunications services to schools and libraries at the lowest rate charged to similarly situated customers (the "lowest corresponding price" or "LCP"). *See* 47 U.S.C. § 254(h)(1)(B); 47 C.F.R. § 54.511(b). Before me now is defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) and relator's motion for leave to file a second amended complaint.[1]

### I. Background

Defendant is a common carrier that receives subsidies under the Education Rate ("E-Rate") Program. Congress established the E-Rate program as part of the Telecommunications Act of 1996. The program provides subsidies to common carriers which provide telecommunications services, including telephone and internet services, to schools and libraries in need. To receive a subsidy, a common carrier must certify that it

---

[1]The United States has not intervened but has filed a statement of interest opposing the motion to dismiss. The United States Chamber of Commerce has filed an amicus brief supporting the motion.

is charging the school or library the LCP. Relator audits the telecommunications records and bills of various school districts and businesses, and he claims that defendant falsely certified that it charged the LCP to one or more of the schools that he audits.

E-Rate subsidies are paid out of the Universal Service Fund (the "Fund"), which is funded by payments from telecommunications carriers which are mandated by the Federal Communications Commission ("FCC"). 47 C.F.R. §§ 54.706, 54.709. The FCC also created and oversees an entity known as the Universal Service Administrative Company ("USAC") which administers the Fund.

## II. Motion to Dismiss

To survive a Rule 12(b)(6) motion, relator's complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). I accept the complaint's factual allegations as true, but allegations in the form of legal conclusions are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The FCA seeks "to protect the funds and property of the Government from fraudulent claims." *Rainwater v. United States*, 356 U.S. 590, 592 (1958). It does this by imposing civil liability on an individual or entity that makes such a claim. *See* 31 U.S.C. § 3729(a)(1). Prior to 2009, the FCA defined a "claim" as "any request or demand . . . for money or property" of which "the United States Government provides any portion . . . ." § 3729(c) (2008). In 2009, Congress amended the definition of claim, clarifying that there can be a claim without the government having "title to the money or property," and that a request or demand can be a claim if it is "presented to an . . . agent of the United States" even if the government didn't provide any of the money sought.

2

Defendant contends that plaintiff's case fails because defendant did not make a claim within the meaning of the statute because the government did not "provide" any of the money it sought. The FCA does not define the term "provide," therefore I assume that Congress intended the ordinary meaning of the term when interpreting the statute. *U.S. v. Ye*, 588 F.3d 411, 414–15 (7th Cir. 2009). In common usage, "provide" is a broad term meaning "to furnish" or "to make available." *See United States ex rel. Sanders v. Am.-Amicable Life Ins. Co. Of Tex.*, 545 F.3d 256, 260 (3d Cir. 2008) (concluding there was no claim under the FCA because the government did not "furnish[] or ma[k]e money available to the defendants"); American Heritage Dictionary 1411 (4th ed. 2000) (defining "provide" as "to make available"). This definition supports the conclusion that the federal government provided the Fund money. The federal government required the common carriers to pay into the Fund; in the absence of such a requirement, the carriers would not have made any payments. Thus, the federal government made the funds available. Moreover, the Fund is little more than a mechanism to pay for a federal program. 47 C.F.R. §§ 54.706, 54.709; *see also* 47 U.S.C. § 254(h)(1)(B) (creating the E-Rate program). The fact that Fund money does not pass through the Treasury does not make the government any less its source.

The purpose of the FCA also supports a broad interpretation of provide. Congress has twice amended the FCA to broaden liability under the FCA to correct what it viewed as incorrect, narrow court interpretations of the statute. *See* S. Rep. No. 99-345, 99th Cong., 2d Sess., at 4, 10–12 (1986), *reprinted in* 1986 U.S.S.C.A.N. 5266, 5269, 5275–77 (stating that the 1986 amendments, which added the pre-2009 definition of claim, were

3

"aimed at correcting restrictive interpretations of the act's liability standard"); S. Rep. No. 111-10, 111th Cong., 1st Sess., at 10–13 (2009), *reprinted in* 2009 U.S.S.C.A.N. 430, 438–40 (stating that the 2009 amendments, which redefined claim, were intended "to clarify and correct erroneous interpretations of the law" to reflect "Congress's original intent in passing the law"). If I were to interpret "provides" narrowly, the effect would be to allow telecommunications companies to fraudulently obtain funds made available by the federal government, a result contrary to what Congress intended.. *King v. Burwell*, 576 U.S. ___, at ___ (2015) ("But in every case we must respect the role of the Legislature, and take care not to undo what it has done."); *see also N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 419–20 (1973) ("We cannot interpret federal statutes to negate their own stated purposes."); *Rainwater*, 356 U.S. at 592 (The FCA seeks "broadly to protect the funds and property of the Government from fraudulent claims, regardless of the particular form, or function, of the government instrumentality upon which such claims were made.").

Courts have held that to satisfy the "provides" requirement, a request or demand must have the potential to cause the government a financial loss. *United States ex rel. Shupe v. Cisco Sys., Inc.*, 759 F.3d 379, 385 (5th Cir. 2014) *see also United States v. Neifert-White Co.*, 390 U.S. 228, 233 (1968); *Sanders*, 545 F.3d at 259; *United States ex rel. Costner v. URS Consultants, Inc.*, 153 F.3d 667, 677 (8th Cir. 1998); *United States ex rel. Fellhoelter v. Valley Milk Prods., LLC*, 617 F. Supp. 2d 723 (E.D. Tenn. 2008); *Lyttle v. AT&T Corp.*, No. 10-1376, 2012 WL 6738242, at *20 (W.D. Pa. Nov. 15, 2012). This does not defeat the conclusion that the government provided the money at issue in this case despite the fact that the money is held in a private fund and administered by a private

4

company. A financial loss to the government does not require a direct loss to the Treasury. *See, e.g.*, *United States ex rel. Shank v. Lewis Enterprises, Inc.*, No. 04-CV-4105, 2006 WL 1207005, at *7 (S.D. Ill. May 3, 2006) (concluding that fraudulent claims paid out by the Abandoned Mine Reclamation Fund constitute federal funds); *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731 (D.C. Cir. 1998) (concluding that a claim submitted to a university receiving federal grant money was a claim within the FCA) *United States ex rel. Luther v. Consol. Indus., Inc.*, 720 F. Supp. 919 (N.D. Ala. 1989) (concluding that a claim submitted to a private contractor receiving federal money pursuant to a contract could constitute a claim within the FCA). Rather, it means that "there must be a sufficiently close nexus between the two such that a loss to the [Fund] is effectively a loss to the [government]." *Yesudian*, 153 F.3d at 738 (D.C. Cir. 1998).

Here, the nexus between the Fund and the government is sufficiently close. This conclusion is supported by the mandatory nature of payments into the fund, 47 C.F.R. §§ 54.706, 54.709, the regulatory relationship between the FCC and the Fund, 47 C.F.R. §§ 54.702 (requiring the USAC to seek FCC guidance on policy and interpretation questions), 54.719 (maintaining FCC authority to review all USAC decisions), the fact that the FCC considers Fund money a federal appropriation, Chorpening Decl. Ex. 6, at 34 (ECF No. 106-7) (FCC financial statement audit, stating that Fund "contributions represent appropriated and dedicated collections and are accounted for as a budgetary financing source"), the fact that Fund money is listed as a part of the federal budget, Chorpening Decl. Ex. 5 (ECF No. 106-6) (copy of the Office of Management and Budget 2015 Budget, listing the Fund's balance and setting forth its budget authority for the coming year), and

5

the fact that the Treasury handles collections for the Fund and then returns any money collected to the Fund, Case Decl. (ECF No. 112) (detailing the procedures by which the FCC and Treasury collect debt owed to the Fund and then transfer to money back to the Fund); Stephens Decl. (ECF No. 113) (same). The fact that the government requires entities to contribute directly to the Fund rather than using a two-step process of collecting money through taxes and transferring it to the Fund should not be a basis for enabling a party who attempts to defraud the Fund to escape liability. *See Brotherhood of R.R. Signalmen v. I.C.C.*, 63 F.3d 638, 641–42 (7th Cir. 1995) ("stating that it is permissible "to penetrate form to substance where necessary to prevent a [party] from defeating [a] regulation by the facile expedient of doing in two steps what could as easily have been done in one"); *Roschen v. Ward*, 279 U.S. 337, 339 (1929) (Holmes, J.) ("[T]here is no canon against using common sense in constructing laws . . ."); *see also* Richard A. Posner, *The Problematics of Moral and Legal Theory* 208–09 (1999) (urging that judges focus on "the actual interests at stake, the purposes of the participants, the policies behind the precedents, and the consequences of alternative decisions"). Thus, relator may proceed with his suit because he has adequately pled that the government "provided" the money within the meaning of the FCA.

Even if the "provides" requirement is not met, relator may still proceed with that part of his suit directed at defendant's post-2009 conduct.[2] This is so because he has adequately alleged that the USAC is an "agent" of the United States as required by the 2009 amendment. As noted above, to state a claim under the post-2009 FCA, relator need

---

[2] Defendant contests whether relator's current complaint alleges post-2009 conduct. As discussed below, I conclude that it does.

only allege that defendant requested money from "an officer, employee, or *agent* of the United States." § 3729(a)(2)(A)(I) (2009) An agent is an entity that "acts on behalf and subject to the principal's control . . . ." The Restatement (Third) of Agency § 1.01 (2006).

Relator alleges that the USAC administered the Fund at the direction of the FCC and that it's operations were carried out pursuant to FCC regulations. Further, the FCC authorizes the USAC to administer the E-Rate program, making it responsible for billing contributors, collecting contributions, and disbursing subsidies, 47 C.F.R. § 54.702(a)–(b), but it maintains control of it by requiring it to seek guidance on policy and interpretation questions, § 54.702(c), determining the composition of it's board of directors, § 54.703, and maintaining the authority to review it's decisions, § 54.719. This is sufficient to allege an agency relationship, and relator is able to proceed with his suit regarding post-2009 conduct for this independent reason.

### III. Motion for Leave to File Second Amended Complaint

After defendant filed its pending motion to dismiss, relator moved for leave to file a second amended complaint. I freely give leave to amend, Fed. R. Civ. P. 15, but may deny leave if the amendment is "for undue delay, bad faith, dilatory motive, prejudice, or futility." *Ind. Funeral Dirs. Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003). Defendant contends that relator's motion for leave for leave to amend suffers from all of these defects.

I will allow the amended complaint. Although the motion was filed three years after the filing of the current complaint, much of that time was spent litigating a previous decision. Thus, I do not find undue delay. I also do not find bad faith or a dilatory motive. Contrary to defendant's assertion, the proposed amended complaint does not contradict

7

the current complaint because the current complaint does not allege that defendant corrected its conduct and does allege post-2009 violations. *See* Compl. at 14–15 (ECF No. 64) (alleging that "Wisconsin Bell did not comply with LCP until at least 2009"); *id.* at 19 (alleging that "[f]rom 1997 through the present, Wisconsin Bell knowingly made or used, and caused to be made or used, false statements including, but not limited to, false representations, material omissions, and/or false certifications relating to prices charged under the E-Rate Program"); *id.* at 3–4 (defining the scope of the complaint as "concern[ing] Wisconsin Bell's acts and practices throughout the State of Wisconsin over the ten years prior to the filing of Relator's initial Complaint in this matter to the present"). Although relator's proposed amended complaint provides additional examples of post-2009 conduct, these allegations merely add details about the post-2010 conduct alleged in the current complaint. Additionally, many of relator's new allegations appear to be aimed at addressing legal issues raised in *Shupe*, which was decided while relator's appeal was pending and thus could not have been anticipated when it filed the current complaint.

Further, based on my conclusion that relator's current complaint states a claim, amendment would not be futile. Finally, the amendment will not prejudice defendant. Though defendant argues that it will be required to file another motion to dismiss, it does not specify what the grounds might be. The proposed amendment simply adds detail rather than new allegations.

### IV. Conclusion

**THEREFORE, IT IS ORDERED** that defendant's motion to dismiss (ECF No. 96) is **DENIED**.

8

**IT IS FURTHER ORDERED** that relator's motion for leave to file second amended complaint (ECF No. 105) is **GRANTED**. The Clerk of Court shall file relator's amended complaint (found at ECF No. 105-1).

Dated at Milwaukee, Wisconsin, this 1st day of July, 2015.

s/ Lynn Adelman

_____

LYNN ADELMAN
District Judge