# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES ex rel. TODD HEATH,**
      **Plaintiff,**

  v.                                                        Case No. 08-CV-724

**WISCONSIN BELL INC.,**
      **Defendant.**

---

## ORDER

Todd Heath brings this action under the False Claims Act alleging that Wisconsin Bell Inc. has knowingly overcharged for telecommunications and information services subsidized under the Universal Service Program for Schools and Libraries, also known as "E-rate," and fraudulently certified compliance with program rules. Wisconsin Bell moves for judgment on the pleadings, and Heath moves to compel discovery.

### I. MOTION FOR JUDGMENT ON THE PLEADINGS

"A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6)" for failure to state a claim upon which relief can be granted. *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). To survive a Rule 12(b)(6) motion, a complaint must state "a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## A. False Claims

Heath alleges that Wisconsin Bell is liable for knowingly overcharging for services that the government subsidizes, a near "paradigmatic" violation of the False Claims Act. *See* Claire M. Sylvia, *The False Claims Act* § 4:2, Westlaw (updated July 2017) (discussing 31 U.S.C. § 3729(a)(1)(A)). Under E-rate, the government pays 20–90% of the price for certain telecommunications and information services provided to eligible schools and libraries. 47 C.F.R. § 54.505. Service providers must offer these services for no more than the "lowest corresponding price" or "LCP," which is the lowest price that a service provider charges "similarly situated" nonresidential customers for "similar services," unless the Federal Communications Commission or equivalent state commission finds that the LCP is "not compensatory." *Id.* §§ 54.500, 54.511(b).

Heath, who owns a company that audits telecommunications records and bills for schools, school districts, and other entities in Wisconsin, alleges that, by comparing information from his clients and investigating Wisconsin Bell's pricing practices, he discovered that Wisconsin Bell, which has offered eligible services to hundreds of Wisconsin schools and libraries and has benefitted from at least $150 million in related subsidies, has routinely charged individualized, disparate rates above the LCP for services under E-rate. He further alleges that when he asked Wisconsin Bell to comply with the LCP requirement for several of his school district clients, its employees and attorneys either claimed not to know about the requirement or denied that Wisconsin Bell was obligated to comply with it.

Wisconsin Bell argues that Heath's allegations are insufficient to plausibly suggest that it has violated the LCP requirement because he does not adequately

allege that the schools and libraries he cites as receiving eligible services at disparate rates are similarly situated or that they receive similar services. I disagree.

In general, schools and libraries in a provider's geographic service area (i.e., "the area in which [it] is seeking to serve customers with any of its [E-rate] services") are similarly situated for LCP purposes unless the provider can show that it faces "demonstrably and significantly higher costs to serve [a particular] school or library." *See* Report and Order, 12 FCC Rcd. 8776, ¶¶ 487–88 (1997). Moreover, the services provided need not be identical. *Id.* ¶ 488. Accordingly, allegations that a service provider has charged schools and libraries (as well as nonresidential customers) different rates for the same or similar services allow for the reasonable inference that the provider has violated the LCP requirement, at least where the rate disparities are not readily attributable to "factors that clearly and significantly affect the cost of service," such as "traffic volumes," "mileage from switching facilit[ies]," and "length of contract." *Id.*

Heath alleges multiple examples of Wisconsin Bell charging geographically proximate school districts and libraries (as well as at least one nonresidential customer) different rates for the same or similar services (e.g., rates per line for "central exchange" phone lines). *See* ECF No. 127, ¶¶ 37, 44, 48. Nothing in his complaint (or available as a matter of judicially noticeable public record) shows that these disparities are due to legitimate, cost-based factors, and his allegations that Wisconsin Bell has consistently disclaimed knowledge of and a duty to comply with the LCP requirement suggest that they aren't. Heath has done enough to plausibly suggest that Wisconsin Bell is liable under the False Claims Act for fraudulently overcharging similarly situated schools and libraries for similar services subsidized by the government under E-rate.

## B. False Certification

While Wisconsin Bell has allegedly been overcharging for E-rate services, it has been annually certifying its compliance with the program's rules, as all participating service providers are required to do. *See* 47 C.F.R. § 54.504(f). Heath alleges that Wisconsin Bell is liable under the False Claims Act for knowingly making material false statements about its compliance with the LCP requirement. A misrepresentation about compliance with a regulatory requirement is "actionable under the False Claims Act" if it is "material to the Government's payment decision." *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2002 (2016). "[T]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.* (alteration in original) (quoting 31 U.S.C. § 3729(b)(4)).

The LCP requirement is a core component of E-rate that directly reflects the "Universal Service Principles" upon which the program is based, especially that schools and libraries should have access to quality telecommunications services at "just, reasonable, and affordable rates." *See* 47 U.S.C. § 254(b). The LCP requirement also implements a statutory requirement that service providers charge schools and libraries for eligible services "at rates less than the amounts charged for similar services to other parties." § 254(h)(1)(B). Finally, aggregate E-rate subsidies are capped each year, *see* 47 C.F.R. § 54.507, so if a service provider hoards subsidies by knowingly overcharging for eligible services, it depletes funds otherwise available to subsidize services for other schools and libraries. Thus, misrepresentations about LCP compliance would naturally influence the government's payment decisions under E-rate.

Wisconsin Bell argues that its statements about LCP compliance are immaterial because the government continues to subsidize its services under E-rate despite learning about and investigating Heath's allegations years ago. In general, "the government's conduct is relevant to assessing materiality" under the False Claims Act. *U.S. ex rel. Marshall v. Woodward, Inc.*, 812 F.3d 556, 563 (7th Cir. 2015). For example, if the government pays a claim in full with actual knowledge that the claimant has violated a regulatory requirement, that suggests that the violation was not material. *See Universal Health Servs.*, 136 S. Ct. at 2003–04. The same is true if the government thoroughly investigates allegations of fraud, determines that they are meritless, and continues to pay for the goods or services at issue. *See Marshall*, 812 F.3d at 563.

The government's conduct here is not so revealing. Though it investigated Heath's allegations, it did not find them to be meritless, as far as I can tell. In fact, its continued involvement in this case (and opposition to Wisconsin Bell's present motion) suggests that it believes Heath's claims may have merit, even if its decision to continue to subsidize Wisconsin Bell's services under E-rate while this litigation is pending suggests that it is not yet convinced of their veracity. The government's apparent ambivalence is insufficient to prove that Wisconsin Bell's allegedly fraudulent statements about its compliance with the LCP requirement are immaterial.

## C. Limitations on Claims

The parties agree that Heath's claims are subject to the False Claims Act's 6-year statute of limitations. 31 U.S.C. § 3731(b)(1). Accordingly, Heath, who filed his original complaint against Wisconsin Bell on October 16, 2008, agrees to limit his claims under the Act to those based on alleged violations that occurred no earlier than October

16, 2002. He notes that a different limitations period may apply if the government intervenes. *See* § 3731(b)(2). I will address that issue if and when it is properly raised.

Wisconsin Bell argues that it is entitled to judgment on Heath's post-2009 claims because he alleges that, "[i]n approximately 2009, . . . Wisconsin Bell began to bill *some* . . . of its Wisconsin E-Rate customers at . . . substantially lower rates." ECF No. 127, ¶ 42 (emphasis added). Even if Wisconsin Bell stopped allegedly overcharging some of its E-rate customers, that does not preclude the possibility that it continued (and is liable for) knowingly overcharging others during and after 2009.

### D. Motion to Strike

Heath argues that Wisconsin Bell raises new arguments for the first time in its reply brief in support of its motion for judgment on the pleadings and moves to strike them. I will deny this motion because "[c]ollateral motions, such as motions to strike, are disfavored" in this district. Civil L. R. 56(b)(9). Heath moves in the alternative that I treat his motion to strike as a surreply. I will deny this motion as unnecessary because I found Wisconsin Bell's arguments unconvincing without considering Heath's "surreply."

## II. MOTION TO COMPEL DISCOVERY

Heath moves to compel Wisconsin Bell to produce in full all documents previously disclosed to the government during its investigation into Heath's allegations of fraud. Wisconsin Bell opposes discovery of two such documents arguing that they are protected by attorney-client privilege and that, pursuant to Federal Rule of Evidence 502(b), its disclosure did not waive the privilege because (1) the disclosure was inadvertent, (2) it "took reasonable steps to prevent disclosure," and (3) it "promptly took reasonable steps to rectify the error."

6

Case 2:08-cv-00724-LA   Filed 09/25/17   Page 6 of 8   Document 175

Heath argues that Wisconsin Bell "has made no effort in the seven years since the[se documents] were produced to claw them back or ask that they be destroyed." ECF No. 159, at 2. However, "the duty to rectify only arises when the opposing party can prove actual knowledge of the disclosure," 23 Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5445 (1st ed.), Westlaw (updated Apr. 2017), so when the documents were first produced does not affect whether Wisconsin Bell's response to their inadvertent disclosure was "prompt." Wisconsin Bell asserts that it only learned about its inadvertent disclosures in 2016 after receiving Heath's discovery requests and that it promptly tried to rectify the error by redacting the privileged portions of the documents and asserting privilege in response to Heath's requests.

Heath argues that Wisconsin Bell's efforts to avoid further disclosure do not amount to "reasonable steps to rectify" its original (if inadvertent) disclosure. I agree. While Rule 502(b)(3) does not define the term "rectify," it generally means "to set right." *Rectify*, Merriam-Webster, https://www.merriam-webster.com/dictionary/rectify (last visited Sept. 25, 2017). Accordingly, a party that inadvertently discloses privileged information waives the privilege unless it can show that, once it learned of its mistake, it promptly and reasonably tried to fix it—e.g., by asking the receiving party to return or destroy the information, *see* Fed. R. Civ. P. 26(b)(5)(B). Wisconsin Bell concedes that it made no such efforts. Thus, it has waived its privilege with respect to the documents at issue, and I will order it to produce them.

Heath also moves to compel Wisconsin Bell to produce an employee named Chris Read for deposition. I will deny this request because Heath raises it for the first time in his reply brief. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009).

7

Case 2:08-cv-00724-LA   Filed 09/25/17   Page 7 of 8   Document 175

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Wisconsin Bell's motion for judgment on the pleadings (ECF No. 154) is **DENIED**.

**IT IS FURTHER ORDERED** that Heath's motion to strike and motion in the alternative for leave to file a surreply (ECF No. 171) are **DENIED**.

**IT IS FURTHER ORDERED** that Heath's motion to compel (ECF No. 158) is **GRANTED in part** and **DENIED in part** as described above.

Dated at Milwaukee, Wisconsin, this 25th day of September, 2017.

/s Lynn Adelman
LYNN ADELMAN
District Judge