# Exhibit 55

*U.S. ex rel. Heath v. Wisconsin Bell, Inc.*, No. 2:08-CV-00724
Wisconsin Bell's Motion for Summary Judgment



Federal Communications Commission
Office of General Counsel
445 12th St. SW ■ Washington, DC 20554
TEL: (202) 418-1740 ■ FAX: (202) 418-2819

April 3, 2020

VIA ELECTRONIC MAIL

Andrew LeGrand, Esq.
Gibson, Dunn & Crutcher LLP
2100 McKinney Ave., Suite 1100
Dallas, TX 75201
ALeGrand@gibsondunn.com

>  Re: Third-Party Subpoena of the Federal Communications Commission in the underlying matter of *U.S. ex rel. Heath v. Wisconsin Bell, Inc.*, No. 2:08-cv-000876 (E.D. Wis.)

Dear Mr. LeGrand:

    I have received the subpoena dated February 21, 2020, that you served on the Federal Communications Commission (FCC or Commission) on behalf of your client, Wisconsin Bell, Inc., in the above-referenced *Heath* litigation. The subpoena seeks the testimony of "one or more [FCC] officers, directors, or managing agents," or "other persons who consent to testify on [the FCC's] behalf," about five broad topics concerning the FCC's administration and enforcement of the E-rate program over a roughly 18-year period. The subpoena further commands that the FCC's representative(s) bring with them to their deposition(s) nine categories of "information or communications" that concern either the E-rate program or "any federal or state 'non-discrimination' or 'similarly situated' pricing requirements," including but not limited to the nondiscrimination requirement of Section 202 of the Communications Act of 1934, as amended, 47 U.S.C. § 202.

    The United States is not a party to the *Heath* litigation. Third-party discovery from the FCC is thus subject to the agency's "*Touhy*" rule. 47 C.F.R. § 0.463 (outlining appropriate procedures for production and disclosure of material within custody and control of FCC); *see U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 468–70 (1951) (upholding regulation prohibiting agency employees from releasing documents without consent of agency head). As contemplated by that rule, I write to describe the production I have authorized, in response to your subpoena, of certain nonprivileged records and information. In addition, this letter provides a brief

statement of our objections to your subpoena. Because our review of the subpoena continues, we reserve the right to supplement these objections in the future. We also specifically reserve and do not waive other objections that may be applicable in discovery or at trial.

### Documents from the Enforcement Bureau, Office of General Counsel, Wireline Competition Bureau, Office of the Managing Director, and USAC

As explained in correspondence dated March 11, 2020, from Kirk S. Burgee, Chief of Staff of the Wireline Competition Bureau, the FCC has searched records in the custody of the agency's Enforcement Bureau, Office of General Counsel, Wireline Competition Bureau (WCB), and Office of the Managing Director, as well as records in the custody of the Universal Service Administrative Company (USAC), for documents responsive to your Freedom of Information Act (FOIA) request No. 2018-000906.

In response to that request, as modified in your letters to Nakesha Woodward of WCB dated January 23 and March 13, 2019, we located more than 5,000 pages of responsive records.[1] In our response of March 11, 2020, we produced more than 1,500 pages of those records. Pursuant to various FOIA exemptions, however, we redacted certain portions of the records produced; other records we withheld. Among other reasons, we redacted or withheld documents pursuant to FOIA Exemptions 4 (protecting privileged or confidential "trade secrets and commercial or financial information") and 6 ("personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy").

In contrast to our March 11 FOIA response, responses to your February 21 subpoena will be subject to the Stipulated Protective Order entered in the *Heath* litigation on April 1, 2016. In view of that protective order, we are now able to make a further production of 29 documents that WCB collected from the above-listed bureaus and offices in response to your 2018 FOIA request. This new production includes copies of five documents that we previously produced in redacted form, as to which, in view of the protective order, we have now removed some or all of the prior redactions. Pursuant to the protective order, we have stamped the pages produced "CONFIDENTIAL."

---

[1] The scope of your current subpoena is significantly broader than your FOIA request as narrowed in these letters, in terms of both subject matter and the time period covered. Further searches in response to your subpoena may uncover additional documents for production or additional categories of documents and related privileges based on which the FCC would object to your document requests.

Andrew LeGrand
Gibson, Dunn & Crutcher LLP
April 3, 2020
Page 3

Notwithstanding the protective order, we continue to withhold and redact documents and portions thereof that are subject to the attorney work product doctrine and the privileges governing confidential attorney-client communications, communications made in furtherance of settlement negotiations, predecisional agency deliberations, and law enforcement investigative files. For example, we have continued to withhold or redact emails and other documents with analysis of claims and defenses in litigation, as communicated between and among government attorneys (at the FCC and sometimes including at the Department of Justice). We have similarly continued to withhold or redact emails that contain internal investigatory documents and evaluations of these documents among government attorneys, including emails seeking advice from the Office of General Counsel. The disclosure of these emails would reveal confidential communications between FCC attorneys and their clients made for the purpose of requesting or relaying legal advice, attorney legal analysis or mental impressions committed to writing in connection with pending or anticipated litigation, predecisional deliberations between or among FCC staff regarding agency policy or decisions, and/or investigative techniques and procedures or other information the disclosure of which would hamper ongoing or future law enforcement efforts.

Our decision to continue to withhold or redact documents of this kind is consistent with the Commission's *Touhy* regulation, which makes clear that the General Counsel should not ordinarily authorize the release of records where "[t]he integrity of the administrative and deliberative processes of the Commission would be compromised," or when "[d]isclosure . . . of the records . . . is not appropriate or required under the relevant substantive law concerning privilege" or "could interfere with ongoing Commission enforcement proceedings or other legal or administrative proceedings." 47 C.F.R. § 0.463(e).

**Documents from the Office of the Inspector General**

As explained in correspondence dated January 23, 2020, from Sharon Diskin, Assistant Inspector General in the Investigations Division of the FCC's Office of the Inspector General (OIG), OIG has searched records in the custody of that division for documents responsive to your Freedom of Information Act (FOIA) request No. 2018-000906, as you revised that request on January 23, 2019.

The OIG production of January 23, 2020, included material responsive to your requested search terms "Gerth & FOIA OR Freedom of Information Act" and "ProPublica & (FOIA OR Freedom of Information Act)" as well as information that OIG received from the Wisconsin Public Service Commission in 2009. More specifically, the production included 4 files containing 15 pages that were released in full. The production also included 25 files containing 78 pages that were released in part, with redactions pursuant to FOIA Exemptions 5 (records that are normally

considered privileged in the civil discovery context), 6 ("personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"), and/or 7(C) (law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy").

In view of the governing protective order in *Heath*, we are now producing new copies of internal emails from which the names, phone numbers, and email addresses of FCC personnel were previously redacted. Although information of that nature is no longer redacted, consistent with the protective order we have marked the pages of today's production "CONFIDENTIAL." Today's production also includes additional documents that OIG located in response to your 2018 FOIA request, which on further review I have determined are not subject to any privilege that now prevents their disclosure.

Notwithstanding the protective order, we continue to withhold and redact documents and portions thereof that are privileged. For example, we have withheld or redacted emails and draft memoranda the disclosure of which would reveal confidential communications between FCC attorneys and their clients made for the purpose of requesting or relaying legal advice, attorney legal analysis or mental impressions committed to writing in connection with pending or anticipated litigation, predecisional deliberations between or among FCC staff regarding agency policy or decisions, and/or investigative techniques and procedures or other information the disclosure of which would hamper ongoing or future law enforcement efforts. As explained above with respect to the documents collected by WCB, *see supra* p. 3, our decision to continue to withhold or redact these OIG documents is consistent with the Commission's *Touhy* regulation. 47 C.F.R. § 0.463(e).

Beyond our review of the earlier OIG production for additional materials now appropriate for release, staff in the OIG Audits Division searched OIG's collection of semi-annual audit reports for the period of 1998 through the present. Based on that search, in a good-faith effort to offer information responsive to the third and fourth categories of documents requested in your subpoena, I can now inform you that, during the specified time period, the OIG Audits Division conducted 27 E-rate program audits. Those audits were all of program beneficiaries, not E-rate service providers. As such, our review of the relevant audit reports confirmed that none of these audits tested for compliance with the E-rate program's lowest corresponding price regulation. OIG's semi-annual reports are publicly available on the internet here: https://www.fcc.gov/inspector-general/reports/semi-annual. Audit reports are publicly available here: https://www.fcc.gov/inspector-general/reports/audit. We have listed the relevant audit report numbers and titles in the attachment to this letter.

We view this information as sufficient for you "to determine the number of audits of E-Rate service providers or beneficiaries completed by the FCC" during the specified time period, including "the number of audits during this time period that included procedures designed to test compliance with the E-Rate program's [lowest corresponding price] requirement." Subpoena, Attachment B, Documents to Be Produced ¶¶ 3, 4. The publicly available reports also provide sufficient "descriptions of those audits" and "summaries of [the] audit findings." *Id.*

We object to your request for information sufficient to determine the "audit procedures utilized during this time period, including any revisions to those procedures," and to your requests for "the audits themselves." Subpoena, Attachment B, Documents to Be Produced ¶¶ 3, 4. Providing such information would reveal investigative techniques and procedures or other information the disclosure of which would hamper ongoing or future law enforcement efforts. The privilege governing law enforcement investigative files precludes the requested discovery.

### **Summary of Objections as to Undue Burdens and Other Related Matters**

The Federal Rules of Civil Procedure impose an affirmative and ongoing duty on parties to use the tools provided proportionately, and to avoid overuse that may increase costs or result in undue burden. *See* Fed. R. Civ. P. 1 (imposing shared responsibility by "court and . . . parties" to construe, administer, and employ Rules to "secure . . . just, speedy, and inexpensive determination of every action and proceeding"). This duty is explicitly reinforced under the discovery provisions, which limit the scope of discovery to "non-privileged matters" that are "relevant to any party's claim or defense and proportional to the needs of the case," considering factors including "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

When discovery is aimed at nonparties via subpoena under Rule 45, the Rules impose a heightened obligation on the court and parties to avoid imposing undue burden or expense. *See* Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(i)–(iii) (mandating that party issuing subpoena "take reasonable steps to avoid imposing undue burden or expense," and requiring courts to quash subpoenas that do not comply); *see also Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012) ("The text of Rule 45 makes quite clear that parties and attorneys who issue subpoenas have an affirmative duty to prevent undue burden or expense to the persons subject to the subpoena."). Where, as here, the nonparties subject to a Rule 45 subpoena include federal government agencies and employees, courts have recognized the need for even greater caution in avoiding undue burden and expense.

Andrew LeGrand
Gibson, Dunn & Crutcher LLP
April 3, 2020
Page 6

The need to avoid undue burden on the government is now particularly great because of the national emergency surrounding the COVID-19 pandemic. During this pandemic, the FCC's senior leaders and staff are grappling with numerous time-sensitive, mission-critical matters—for example, working to ensure that all Americans and American businesses are able to maintain the broadband and telephone connectivity on which the nation now relies more than ever for telework, telehealth, and remote learning. At the same time, the pandemic has required the FCC to close its facilities (except to allow limited access when necessary to perform essential functions that cannot be performed remotely), and the agency's entire workforce has transitioned to mandatory telework. These conditions significantly increase the burden of responding to your subpoena.

Moreover, you have not shown why the wide-ranging deposition topics and very broad set of documents identified in your subpoena are "likely [to] benefit" your client's position in *Heath*—let alone confer a benefit that would outweigh the considerable burden and expense the proposed discovery would impose on the government. Fed. R. Civ. P. 26(b)(1). In your *Touhy* request letter, you assert that the proposed discovery is needed to show that "any statements or omissions by Wisconsin Bell about the [lowest corresponding price] requirement were immaterial to the FCC's or USAC's decision to provide reimbursements under the E-rate program." *Touhy* Request Letter, p. 5. But your claim that the proposed discovery might uncover such information is belied by the Commission's publicly available rules and orders, including the lowest corresponding price rule itself, 47 C.F.R. § 54.511(b), and several admonitions in the Commission's 2014 order modernizing the E-rate program, *see, e.g.*, *Modernizing the E-rate Program for Schools and Libraries*, 29 FCC Rcd 8870, 8943 ¶ 183 (2014) ("[W]e remind service providers that they not only must charge eligible schools, libraries, and consortia the [lowest corresponding price] when providing E-rate services, but also must offer eligible entities the [lowest corresponding price] when submitting competitive bids to provide E-rate supported services."); *id.* at 8944 ¶ 186 (directing FCC's Enforcement Bureau "to investigat[e], and where appropriate, bring[] enforcement actions against service providers who violate the [lowest corresponding price] rule").

Guided by these standards and considerations, we preserve the following objections and reserve our right to assert any additional objections that may be warranted as our review of the subpoena continues:

1. The subpoena imposes unreasonable time periods for compliance. Specifically, the subpoena for testimony and documents from the FCC commands the production of documents and the appearance of at least one witness on March 13, 2020. That date has now passed, and it was unreasonable to begin with, as it allowed the FCC a mere three weeks from service of the subpoena to comply. Three weeks is less than the

> period allowed under the Federal Rules for *parties* to object to document requests, much less to produce the requested documents. *See* Fed. R. Civ. P. 34(b)(2). The time allowed is accordingly unreasonable, especially considering the undefined time period for documents demanded by the subpoena and the various privilege-related issues raised by the requests. *See* Fed. R. Civ. P. 45(c)(3)(A).

2. The subpoena appears to seek information beyond the scope of permitted discovery under Rule 26(b)(1). In particular, the subpoena appears to seek privileged information; information that is not relevant to any party's claim or defense; and information that is not proportional to the needs of the case, taking into account the relevant factors set forth in the Rules.

3. The subpoena's definitions and, by extension, document requests are overbroad and fail to describe with "reasonable particularity" each item or category of items requested. As a result, much of what is sought is either irrelevant under Rule 26(b)(1) or unduly burdensome to search for or produce. For example, with expansive definitions of the terms "Communication(s)" and "Relating To," several requests seek the FCC's "communications with" or "relating to" a broad swath of individuals, entities, or topics (e.g., "[a]ny communications with any other individual or entity related to the E-Rate program's [lowest corresponding price] requirement")), without tailoring the requests to a relevant subset of documents proportional to the needs of the underlying litigation. These requests thus unavoidably encompass documents that are irrelevant to proper areas of inquiry in the underlying litigation, and hence fail to comply with the proportionality requirement mandated by Rule 26 and the protections afforded to government agency nonparties under Rule 45, as explained above. The definitions and requests are also vague, ambiguous, and open to interpretation, including as to the terms "communications" and "relating to."

4. The document requests themselves are overbroad and unduly burdensome. For example, the subpoena seeks "[a]ny communications related to or with ProPublica," without regard to whether those communications have any bearing on topics of concern in the *Heath* litigation, or even more generally on the E-rate program. Subpoena, Attachment B, Documents to Be Produced ¶ 9. Another example is your request for "[a]ny internal information or communications relating to the creation, interpretation, regulation, analysis, investigation, enforcement, or adjudication of the E-Rate program's lowest corresponding price requirement." *Id.* ¶ 2. Not only is much of the information requested likely to be privileged, but the request is overly broad and unduly burdensome

> in that it seeks information from an unspecified time period and not limited to specified individuals or units within the FCC.

5. We object to the subpoena to the extent it seeks information that appears available from, or in the possession of, parties to the underlying litigation, particularly documents in your own files or those of Relator Todd Heath. *See, e.g.*, *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.").

6. We object to the extent that the subpoena seeks legal conclusions. In addition, to the extent the subpoena seeks publicly available information concerning statutes, regulations, guidelines, or procedures, it would entail the same effort for Wisconsin Bell to obtain that information as it would the FCC. *See, e.g.*, *SEC v. Samuel H. Sloan & Co.*, 369 F. Supp. 994, 995 (S.D.N.Y. 1973) ("It is well established that discovery need not be required of documents of public record which are equally accessible to all parties.").

### **Summary of Objections as to Privileged Materials**

Privileged matters and documents are presumptively beyond the scope of discovery under Rule 26(b)(1) and cannot be requested by a party or attorney issuing and serving a subpoena under Rule 45 absent an exception or waiver. *See* Fed. R. Civ. P. 26(b)(1) (confining the scope of discovery to "any nonprivileged matter" that is relevant "and proportional to the needs of the case"); Fed. R. Civ. P. 45(d)(1), (d)(3)(iii) (mandating that courts protect persons subject to subpoenas by quashing or modifying a subpoena that "requires disclosure of privileged or other protected matter"). In addition to all previously asserted objections, we object to the extent the subpoena seeks information or documents protected under the attorney work product doctrine and the privileges for attorney-client communications, confidential statements made in furtherance of settlement negotiations, agency deliberative process documents, and law enforcement investigatory files.

To the extent the requests seek nonpublic documents and testimony concerning investigations and related evaluations conducted by the FCC or USAC, we object under the law enforcement investigative privilege, deliberative process privilege, attorney-client privilege, and work product doctrine to producing investigative and agency files, including those that would reveal investigatory techniques and evaluative processes of the FCC, its agent USAC, or the Department of Justice, or that "would hamper future law enforcement efforts by enabling adversaries of law enforcement to evade detection." *United States v. Owens*, No. 18-CR-157, 2019 WL 6896144, at *5 (E.D. Wisc. Dec. 18, 2019) (quoting *United States v. Rigmaiden*, 844 F. Supp. 2d 982, 1002 (D. Ariz. 2012)); *see also* 28 C.F.R.

Andrew LeGrand
Gibson, Dunn & Crutcher LLP
April 3, 2020
Page 9

§ 16.26(b)(4), (b)(5) (prohibiting disclosures that would reveal "investigatory records complied for law enforcement purposes, . . . interfere with enforcement proceedings[,] or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired").

Likewise, to the extent the requests otherwise seek confidential communications between the FCC and its attorneys made for the purpose of requesting or relaying legal advice or services, or documents that reflect such communications, we object under the law of attorney-client privilege. *See, e.g.*, *In Re: A Witness Before the Special Grand Jury 2000-2*, 288 F.3d 289, 291 (7th Cir. 2002) ("[I]n the civil and regulatory context, the government is entitled to the same attorney-client privilege as any other client."). And we object under the work product doctrine to the production of emails, memoranda, and other documents prepared by or at the direction of any FCC or Department of Justice attorney in contemplation of litigation, including "documents prepared in anticipation of administrative litigation." *In re Apollo Grp., Inc. Secs. Litig.*, 251 F.R.D. 12, 19 (D.D.C. 2008); *see also id.* at 20 (agency program review arising out of qui tam allegations was "in anticipation of litigation," not routine monitoring).

In addition, we object to the production of documents the disclosure of which would reveal the FCC's confidential settlement communications. "There exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003). And courts have questioned the probative value of statements made during settlement negotiations, which are often "motivated by a desire for peace rather than from a concession of the merits of the claim." *Id.* at 981 (internal quotation marks omitted). We thus object to the disclosure of such statements based on the privilege for confidential settlement negotiations. With respect to draft settlement communications, we also object to discovery on grounds of the attorney work product doctrine and law enforcement investigative privilege.

Your requests seek numerous documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which the FCC formulated certain decisions and policies. Such documents are subject to the deliberative process privilege, and we accordingly object to production on that basis as well. *See, e.g.*, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975) (disclosure of such documents might inhibit "frank discussion of legal or policy matters in writing," to detriment of resulting decisions and policies).

You have suggested in prior discussions and correspondence that, in the context of the *Heath* litigation, the government may not assert the deliberative process privilege. We disagree.

To be sure, the deliberative process privilege is not absolute; it "may be overcome where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality." *United States v. Farley*, 11 F.3d 1385, 1389 (1993); *accord United States v. Menominee*, No. 07-C-316, 2009 WL 637188, at *1 (E.D. Wisc. Mar. 10, 2009). But assertions that government documents "are relevant" or "important" to a party's defenses in litigation are not enough. *Farley*, 11 F.3d at 1390; *see id.* (mere relevance is "insufficient reason for breaching . . . deliberative process privilege"). Rather, in considering whether a requesting party's interest in disclosure outweighs the government's privilege, a court must balance the requester's need for specific documents against the "nature" of those documents and "the effect of [their] disclosure on the government." *Id.*; *see also United States v. Zingsheim*, 384 F.3d 867, 872 (7th Cir. 2004) (whether exception to government's privilege applies "must be addressed and resolved one lawsuit—indeed, one document—at a time").

The cases you have identified do not support your contention that the government has no deliberative process privilege in a qui tam False Claims Act case. Many of the cases on which you rely do not involve the deliberative process privilege at all. For example, the Supreme Court's decision in *Universal Health Services, Inc. v. United States ex rel. Escobar*, — U.S. —, 136 S. Ct. 1989 (2016), merely recognizes that regulatory requirements may not be "material" within the meaning of the False Claims Act if evidence shows that the government paid "a particular claim in full despite . . . actual knowledge that [the] requirements were violated," or that the government "regularly pays a particular type of claim in full despite actual knowledge that [the] requirements were violated." *Id.* at 2003–04; *accord U.S. ex rel. Berg. v. Honeywell Int'l, Inc.*, 740 Fed. App'x 535, 538 (9th Cir. 2018); *U.S. ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 489–93 (3d Cir. 2017); *U.S. ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 333–34 (9th Cir. 2017); *see also Coyne v. Amgen, Inc.*, 717 Fed. App'x 26, 29 (2d Cir. 2017) (plaintiff failed to plausibly allege material misrepresentation under *Escobar* standard).

The cases you have cited that do address the deliberative process privilege likewise do not hold that the government is categorically barred from asserting the privilege in cases like *Heath*. In *United States ex rel. Hartpence v. Kinetic Concepts Inc.*, No. CV 08-1885, 2018 WL 7568578, at *4–5 (C.D. Cal. July 30, 2018), a federal magistrate judge concluded that, as to specific documents in that case, the defendant had shown that its particularized need for disclosure outweighed the government's deliberative process privilege. Although stating that the government's financial interest in the relator's suit "weigh[ed] heavily in favor of disclosure," *id.* at *3, the court did *not* assert that the government's financial interest in qui tam actions will necessarily justify the disclosure of deliberative documents in every case. Indeed, although requiring the disclosure of some deliberative documents, the *Hartpence* court refused to order the disclosure of others.

Similarly, although the court in *United States ex rel. Polansky*, No. 12-cv-4239, Dkt. 510 (Aug. 8, 2019), *denying objections in relevant part,* Dkt. 520 (E.D. Pa. Aug. 21, 2019), directed production of certain documents as to which the government had asserted the deliberative process privilege, that decision was based primarily on the age of the documents and perceived shortcomings in the government's privilege log—not on any blanket determination that the deliberative process privilege is unavailable to the government in qui tam cases analogous to *Heath*. And as the D.C. Circuit has held, a time limit on asserting the deliberative process privilege would undermine the very goal of the privilege. *See Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 464–65 (D.C. Cir. 2014) (Kavanaugh, J.).

## **Procedural Matters**

Finally, we note that this case has been pending for more than a decade. Wisconsin Bell received its summons in July 2011, and the parties have engaged in active discovery since at least March 2016. The initial deadline for discovery was March 3, 2017. Although Wisconsin Bell filed a motion for judgment on the pleadings, the court denied that motion over 18 months ago. The most recent discovery deadline—March 13, 2020—was established pursuant to the parties' seventh agreed extension. Yet you waited until just three weeks before that deadline, on February 24, 2020, to serve your subpoena on the FCC. Beyond the numerous legal objections we have raised and the particular difficulties presented by the COVID-19 pandemic, the timing and scope of your subpoena constitute additional, independent reasons why your request is unduly burdensome, such that the FCC should not be compelled to respond.

\*     \*     \*

For the foregoing reasons, we object to your third-party subpoena for deposition testimony and documents except to the extent I have authorized the release of records, enclosed with this letter, pursuant to the FCC's *Touhy* regulation. In particular, we decline to provide a witness pursuant to the subpoena at this time. Nevertheless, you have indicated a willingness to "work with the FCC to determine which FCC custodians are most likely to have relevant information," and to "initially limit [your] document requests to encompass materials that include one or more of [specified] search terms." Subpoena, Attachment B, Instructions ¶¶ 7, 8. We welcome the opportunity to meet and confer concerning your requested discovery, and to attempt to resolve or narrow our areas of disagreement informally. If you have questions or concerns, please contact Susan Launer of my office. She can be reached at Susan.Launer@fcc.gov.

Andrew LeGrand
Gibson, Dunn & Crutcher LLP
April 3, 2020
Page 12

                              Respectfully submitted,

                              /s/ Thomas M. Johnson, Jr.

                              Thomas M. Johnson, Jr.
                              General Counsel
                              Federal Communications Commission
                              445 12th Street SW
                              Washington, DC 20554
                              (202) 418-1740

Enclosures

cc:  Susan Launer (via email)
     Jennifer Chorpening (via email)

Andrew LeGrand
Gibson, Dunn & Crutcher LLP
April 3, 2020
Attachment

**List of Office of the Inspector General E-rate Audits from 1998 through Present**

| Audit Number | Beneficiary |
|---|---|
| 02-AUD-02-04-010 | Enoch Pratt Free Library |
| 03-AUD-02-04-13 | Robeson County Public School |
| 02-AUD-04-13 | Wake County Public School |
| 02-AUD-04-16 | Albermarle Regional Library System |
| R-GR-FCC-0006-2003 | Santa Fe Indian School, Inc. |
| 02-AUD-02-04-07 | St. Matthew Lutheran School |
| 02-AUD-02-04-11 | Prince William County Schools |
| 02-AUD-02-04-12 | Arlington Public Schools |
| R-GR-FCC-0005-2003 | Navajo Preparatory School, Inc. |
| 02-AUD-02-04-20 | Immaculate Conception School |
| 02-AUD-02-04-025 | Children's Storefront School |
| 02-AUD-02-04-017 | St. Augustine School |
| 02-AUD-02-04-003 | Southern Westchester Board of Cooperative Educational Services |
| 02-AUD-02-04-006 | United Talmudical Academy |
| 02-AUD-02-021 | Annunciation Elementary School |
| R-GR-FCC-0007-2003 | St. Mary's Catholic School |
| R-GR-FCC-0008-2003 | St. Joseph High School |
| R-GR-FCC-0009-2003 | St. Patrick Catholic School |

Andrew LeGrand
Gibson, Dunn & Crutcher LLP
April 3, 2020
Attachment

| Audit Number | Beneficiary |
|---|---|
| 10-AUD-05-03 | Pittsburg Unified School District |
| 10-AUD-11-01 | Hampstead Hill Elementary School |
| 12-INSP-09-04 | Perry Street Public Charter School |
| 13-AUD-12-28 | Show Low Unified School District |
| 13-AUD-12-27 | Parker Unified School District |
| 15-AUD-04-03 | Amarillo Independent School District |
| 15-AUD-07-07 | Orange County Library System |
| 17-AUD-05-02 | West Baton Rouge Parish Central Office |
| 18-AUD-08-06 | East Central Independent School District |