# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA ex rel.
TODD HEATH,**
    **Plaintiff,**

    v.                                                   Case No. 08-cv-0724

**WISCONSIN BELL, INC.,**
    **Defendant.**

_____

## DECISION AND ORDER

Relator Todd Heath brings this *qui tam* action under the False Claims Act ("FCA") alleging that defendant Wisconsin Bell Inc. fraudulently obtained subsidies by falsely certifying that it was providing telecommunications services to schools and libraries at the lowest rate charged to similarly situated customers. *See* 47 U.S.C. § 254(h)(1)(B); 47 C.F.R. § 54.511(b). Wisconsin Bell moves for summary judgment. The parties have also brought motions for the exclusion of expert witnesses, motions to restrict documents, and a motion to set a briefing schedule for a possible motion for sanctions.

## I.     THE E-RATE PROGRAM

Wisconsin Bell is a common carrier that receives subsidies under the Education Rate ("E-rate") Program. Congress established the E-rate program as part of the Telecommunications Act of 1996. Under the program, the government pays 20-90% of the price of certain telecommunications and information services provided to eligible schools and libraries. 47 C.F.R. § 54.505. To receive a subsidy, a common carrier must annually certify that it is charging the school or library the lowest corresponding price.

The "Lowest corresponding price" or "LCP" is the lowest price that a service provider charges "similarly situated" nonresidential customers for "similar services," unless the Federal Communications Commission or equivalent state commission finds that the LCP is "not compensatory." 47 C.F.R. §§ 54.500, 54.511(b). "Similarly situated" is not a defined term in the regulations but the FCC has provided guidance on which customers are similarly situated. *See Meza Morales v. Barr*, 973 F.3d 656, 664-65 (7th Cir. 2020) (Deference to agency guidance is appropriate where regulation is ambiguous). In general, schools and libraries must be in a provider's geographic service area (i.e., "the area in which [it] is seeking to serve customers with any of its [E-rate] services") to be considered similarly situated. *In the Matter of Fed.-State Joint Bd. on Universal Serv.*, 12 F.C.C. Rcd. 8776, ¶ 487 (1997) ("First Report and Order"). Further, customers are not "similarly situated" when they are differentiated by factors "clearly and significantly" affecting cost, including but not limited to traffic volume, mileage from a switching facility, and length of contract. *Id.* at ¶ 488.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

## III.  ANALYSIS

The FCA imposes civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."

31 U.S.C. § 3729(a)(1)(A). FCA civil claims thus require proof of two primary elements: (1) falsity and (2) scienter. The Supreme Court has also interpreted § 3729(a)(1)(A) to require that knowingly false claims be material to the government's payment decision for liability to attach. *Univ. Health Servs., Inc. v. U.S. ex real. Escobar*, 579 U.S. 176, 193 (2016).

### A. Heath Does Not Show Falsity

Heath argues that Wisconsin Bell is liable under the FCA because it submitted claims for subsidies while falsely certifying compliance with the LCP rule. To show that any certification was false, Heath must first show that Wisconsin Bell violated the LCP rule. A provider violates the rule if it charges E-rate customers a higher rate than it charged similarly situated customers for similar services. 47 C.F.R. §§ 54.500, 54.511(b). Customers are similarly situated if they are within the same geographic service area and they are not significantly different based on factors related to cost including, but not limited to, traffic volume, mileage from a switching facility, and length of contract. First Report and Order, 12 F.C.C. Rcd. 8776, ¶ 488.

Heath makes no argument that any of Wisconsin Bell's customers were similarly situated based on any factors related to cost.[1] Heath concedes that cost factors are relevant to the similarly situated analysis but argues that Wisconsin Bell has the burden of showing customers were not similarly situated. The only authority Heath points to in

---

[1] Heath makes two references to his expert witness, James Webber, having evaluated factors related to cost, but does describe what factors Webber considered or which customers (if any) he found to be similarly situated. Undeveloped and perfunctory arguments are waived, and Heath's failure to develop this argument is sufficient to find waiver. *See Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016).

3

support of his argument is FCC guidance stating that providers are only permitted to charge prices "above the prices charged to other similarly situated customers when those providers can show that they face demonstrably and significantly higher costs." *Id.*

To begin with, this statement does not describe which party has the burden of proving which customers are similarly situated. Rather, by its terms, it applies only after similarly situated customers have been identified. Second, and more importantly, the FCA requires the relator—not the defendant—"to prove all essential elements of the cause of action." 31 U.S.C. § 3731(d). *See also U.S. ex rel. Crews v. NCS Healthcare of Ill., Inc.*, 460 F.3d 853, 857 (7th Cir. 2006) ("In effect, [relator] is arguing that [defendant] must prove that each and every claim it ever filed with the [government] was lawful, an argument that defies common sense and the plain language of the FCA"). Agency guidance on the interpretation of a regulation cannot alter the burden of proof set out by the FCA.

Because Heath does not show that any customers were similarly situated based on the relevant factors, he cannot show that any E-rate customers were charged more than the lowest corresponding price. However, Heath argues that Wisconsin Bell may have violated the LCP rule in three other ways: (1) it failed to "seek recourse" from the government before charging an E-rate customer a rate higher than the LCP; (2) it failed to offer E-rate customers the lowest prices available, including failing to offer negotiated state rates to customers who were eligible for those rates; and (3) it charged highly varied prices to different customers for similar services. For the reasons explained below, these arguments also fail.

4

### 1. Heath Does Not Show Wisconsin Bell Failed to Seek Recourse from the Government Before Charging Higher Than the LCP

Heath argues that Wisconsin Bell was obligated to "seek recourse" from either the FCC or the equivalent state agency before charging any E-rate customer a price higher than the LCP. *See* 47 C.F.R. §§ 54.504(c); First Report and Order, ¶ 490. The problem with this argument is that, for the reasons discussed above, Heath has failed to show Wisconsin Bell charged any E-rate customers a price higher than the LCP in the first place. Accordingly, this argument fails.

### 2. Heath Does Not Show Wisconsin Bell's Pricing Policies Violated the LCP Rule

Heath also argues that Wisconsin Bell's pricing policies precluded compliance with the LCP rule because they did not require salespeople to offer E-rate customers the lowest possible price. For instance, salespeople did not always inform customers that they were eligible for special, state negotiated rates and did not always offer customers equivalent, cheaper services. But the LCP rule does not require a provider to offer E-rate customers the *lowest* rate available; it requires providers to offer the lowest rate charged to *similarly situated customers*. Heath does not show that any customers that were charged the lower rates were similarly situated to those who were charged a higher rate. Without such a showing, a reasonable jury could not infer Wisconsin Bell violated the LCP rule. Accordingly, these arguments fail.

### 3. Price Variations Do Not Necessarily Violate the LCP Rule

Heath next argues the varied prices charged to E-rate customers necessarily demonstrate violations of the LCP. According to Heath, "given the price variation, [the charges] could not possibly all have been LCP compliant." ECF no. 311 p. 13. But the

5

LCP rule does not prohibit varied prices in and of themselves. Highly varied prices may be suspicious, but once again they do not demonstrate a violation of the LCP rule without a showing that the differently charged customers were similarly situated. Heath does not make that showing. Heath fares no better when he addresses specific price variations. For instance, Heath points to the Bruce Guadalupe Community School, which was charged a rate more than three times higher than the rate charged to Automatic Data, a non-residential customer buying the same service. But again, Heath makes no attempt to show that the two customers were similarly situated. Accordingly, this argument fails.

### B. Relator Does Not Show Scienter

Even if Heath's interpretations of the LCP rule are correct, his claims would nonetheless fail on scienter. The FCA's scienter requirement is statutorily defined. A party who submits, or causes to be submitted, a false claim to the government is liable only if it acted knowingly. 31 U.S.C. § 3729(a)(1)(A). "Knowingly" means "that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(B). "The FCA levies significant consequences against parties found liable under the Act and balances the severity of its penalties by carefully circumscribing liability, in part through its scienter requirement." *U.S. ex rel. Schutte v. Supervalu Inc.*, 9 F.4th 455, 463 (7th Cir. 2021).

Recently, the Seventh Circuit adopted the Supreme Court's scienter standard for the Fair Credit Reporting Act from *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 127 (2007), and applied it to the FCA's scienter provision. *Id.* at 467. Under this standard, a finding of scienter is precluded if: (1) the defendant's interpretation of the

6

regulation was objectively reasonable and (2) no authoritative guidance cautioned defendant against it. *Id.* at 464.

Wisconsin Bell interprets the LCP rule to allow it to consider cost-based factors when determining which customers are similarly situated and to allow it to offer different rates to different E-rate customers. I agree with these interpretations. Even, however, if they are incorrect, they are objectively reasonable because they are consistent with the plain language of the LCP rule and the FCC guidance. Heath does not identify any authoritative guidance cautioning Wisconsin Bell against these interpretations. Accordingly, Heath does not show scienter.

Because Heath does not show falsity or scienter, I will grant Wisconsin Bell's motion for summary judgment.

## IV. MOTIONS TO EXCLUDE

The parties have also filed three motions to exclude expert opinions and testimony. Because I have decided Wisconsin Bell's motion for summary judgment on grounds unrelated to the content of those experts' reports, I need not address the motions and will deny them as moot.

## V. MOTIONS TO SEAL DOCUMENTS

The parties have filed several motions to restrict access to documents they have submitted in support of their motions. The motions to restrict are unopposed, but because I have an obligation to ensure that court filings remain open to public review unless good cause for restricting them is shown, I must still decide whether the materials may be restricted. *See, e.g., Baxter Int'l Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002). Most of the documents which the parties have moved to restrict did not inform my

7

decision. As such, these documents may remain restricted. *See Baxter*, 297 F.3d at 545 (only documents that "underpin the judicial decision" are open to public inspection); *see also City of Greenville, Ill. v. Sungenta Crop Protection, LLC,* 764 F.3d 695, 698 (7th Cir. 2014) (the public has no right to access documents that "cannot conceivably aid the understanding of judicial decision making").

Some of the documents the parties wish to restrict were relevant to my decision, and I cannot restrict access to them unless they contain trade secrets or other categories of bona fide long-term confidentiality. *Baxter*, 297 F,3d at 545 (7th Cir. 2002). The parties do not argue that the documents reveal trade secrets or other information that may be properly withheld from the public record. Accordingly, I will deny the motions to restrict as regards the following documents: ECF nos. 277, 310, 312, 314-1, 317, 318, and 319. I will grant the motions to restrict as regards the remaining documents.

## VI. MOTION TO SET BRIEFING SCHEDULE

Wisconsin Bell has filed a motion for leave to set a briefing schedule on a possible forthcoming motion for sanctions. Wisconsin Bell explains that it is unsure if such a motion would qualify as a "dispositive motion" under this Court's scheduling order and therefore requests a separate schedule. I will clarify that I do not consider a motion for sanctions to be a dispositive motion under the scheduling order in this case, but I am not inclined to set a briefing schedule on a motion for sanctions at this time. I will deny this motion, and the briefing schedule for any subsequent motions will be controlled by the local rules.

## VII. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Wisconsin Bell's motion for summary judgment at ECF no. 276 is **GRANTED.** The Clerk of Court is directed to enter judgment in this case.

**IT IS FURTHER ORDERED** that the motions to exclude at ECF nos. 266, 274 and 278 are **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that the motions at ECF nos. 302 is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that the motion to set a briefing schedule at ECF no. 272 is **DENIED.**

**IT IS FURTHER ORDERED** that the motions to restrict documents at ECF nos. 268, 283, 287, 289, 296, 300, and 303 are **GRANTED.**

**IT IS FURTHER ORDERED** that the motions to restrict documents at ECF no. 270, 307, 316 are **GRANTED IN PART** and **DENIED IN PART** as described in this order. The Clerk of Court is instructed to lift the restrictions on the following documents: ECF nos. 277, 310, 312, 314-1, 317, 318, and 319

Dated at Milwaukee, Wisconsin, this 23rd day of March, 2022.

s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge